IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

MILTON ATTERBERRY   PLAINTIFF

vs.   CIVIL ACTION NO. 2:09-cv-00172-KS-MTP

CITY OF LAUREL   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment [Doc. # 24], filed on behalf of City of Laurel. The court, having reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the summary judgment motion should be **granted**. The court specifically finds as follows:

## I. FACTS

Milton Atterberry has brought race discrimination claims against his former employer, City of Laurel, under Title VII and 42 U.S.C. § 1981, claiming that he was treated less favorably than a similarly situated employee based on race. Atterberry began his employment with the City of Laurel as a field inspector on October 24, 2007. Atterberry was hired despite failing the prerequisite civil service exam, based on the City Administrator's recommendation to the Civil Service Commission that he was qualified due to relevant past work experience. Less than a year later, on September 10, 2008, the City Council was forced to eliminate two field inspector positions due to budget cuts that would be effective on October 1, 2008, the beginning of the next fiscal year.

1

The City of Laurel's Personnel Rules and Regulations require that layoffs be prioritized based on employee seniority:

> (a) If a job of a comparable classification is open, a regular full time employee shall be transferred or demoted rather than separated.
>
> . . .
>
> (d) Past service shall be the primary consideration in selecting employees who will be the last to be transferred, demoted, or separated.
>
> (e) The regular full time employee within a classification, and with highest seniority, shall be the last to be transferred, demoted, or separated.
>
> (f) Bumping will not be allowed for any reason.

*See* Mem. Supp. Summ. J 2-3 [Doc. # 25]. Under these rules, the employees subject to layoff out of the three field inspectors were Milton Atterberry, a black male, and Larry Adams, a white male.[1] Between these two men, Atterberry was hired October 2007 while Adams was transferred to the field inspector position in May 2007.[2] Under the City's policy then, Adams had first pick of transfer opportunities. The crux of Atterberry's disparate treatment claim is that the city treated Adams more favorably because they provided Adams more transfer opportunities and that the city's actions left Adams in a better position to hear about transfer opportunities.

---

[1] At the time Atterberry was laid off, the third field inspector was Donnis Williams. A fourth inspections department employee, Mr. Carter, had passed away. It is unclear when this occurred, and whether his vacant position was one considered eliminated, although there is some basis to believe that his position was funded through May. *See* Atterberry Dep. 56:21- 57:4; 62:21-64: 10 [Doc. # 27-2]; Ms. Clark, Human Resources Manager, testified in her deposition that three positions would be eliminated that fiscal year, two of which were to be immediately terminated. *See* Clark Dep. 6:22- 7:2.

[2] Adams was first hired by the city in April 2004 as a records clerk with the police department and then transferred into the field technician position. Regardless of whether seniority is measured by employment with the city in general or employment within a particular position, Adams had more seniority than Atterberry.

As to Atterberry, he was informed that his position was being eliminated in a meeting on September 11, 2008, the day after the City Council's announcement. The City offered him a job as a traffic maintenance technician, but Atterberry declined the offer because it was only a temporary, three month job. The position was also a lower pay grade: field inspectors were in pay grade 13 while traffic maintenance technicians were in pay grade 7. Rebecca Clark, the Human Resources Manager, testified that the traffic maintenance technician position was the only open position that Atterberry qualified for because it did not require passing the civil service exam. *See* Mot. Summ. J, Ex. E, Clark Dep. 31 [Doc. # 24-6]. When Atterberry declined the transfer, he was placed on administrative leave with pay until the end of the fiscal year and was also placed on a reinstatement eligibility list which would allow him to be notified if a position within his classification came available. *See* Ex. F [Doc. # 24-7]. Less than a week later, on September 16, 2008, the City Council approved the creation of a new job, safety coordinator, and posted in-house notice of the new position. This position required passage of the civil service exam as a prerequisite and was pay grade 15. The city did not contact Atterberry and inform him that they were interviewing current city employees for this position. However, Atterberry does state in his deposition that he heard about the safety coordinator position from Gary Carmichael, president of the city council, about a week after he was released, but that he did not apply for it. *See* Atterberry Dep. 62:8-64:23 [Doc. # 27-2]. His employment was terminated on September 30, 2008.

As to Adams, the city undoubtedly treated him differently than Atterberry. No one called a meeting with Adams to advise him that his job had been eliminated or to offer him a list of available jobs to which he could transfer. He was not placed on administrative leave or offered

3

the pay grade 7 job as traffic maintenance technician. Instead, the city contends that Adams continued to work, oblivious to the fact that his job would be eliminated at the end of the month.[3] When Adams saw the in-house posting for the new position of safety coordinator, he applied for it on September 22, still not knowing that his current position with the city would be eliminated in less than two weeks. Adams was interviewed for the new position on September 29, 2008, was picked by the city as the most qualified out of five applicants, and began working in the new position on October 1, 2008.

The city argues that since Adams had a passing score on the civil service exam, he qualified for more positions. Ms. Clark testified that Atterberry was not qualified for any positions that came available after he left. *See* Clark Dep. 33. Ms. Clark testified that "the only thing that [Atterberry] is qualified to do under [the city's] rules and regulations is the field inspector position." Clark Dep. 11:21-23. A passing grade on the civil service exam was necessary to be considered for any other position. Clark Dep 12:9-10. Atterberry argues that the city has not explained why Adams was not given notice that he would be terminated unless he qualified for an open position or why Adams was not placed on administrative leave, and claims that this is circumstantial evidence that both the city and Adams knew of the safety coordinator position before it was officially approved, and that Atterberry was put on administrative leave so that he would not hear about the position and attempt to apply.

---

[3]Atterberry alleges that Adams was offered his old records clerk position at the police department, but declined it. *See* Atterberry Dep. 67. Both Adams and Rebecca Clark deny this. *See* Clark Dep. 14; Adams Dep. 14:18-21; 19:13-19. A records clerk position came open at the same time as the safety coordinator position was created, September 16, 2008. Clark Dep. 13.

## II. STANDARD OF REVIEW

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004). Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on his pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

## III. APPLICATION

Plaintiff alleges race discrimination in violation of Title VII and 42 U.S.C. § 1981. [4]Title VII forbids an employer from discharging an employee because of their race. *See* 42 U.S.C. § 2000e-2(a) (2000). Without direct evidence of discrimination, a plaintiff can use the *McDonnell Douglas-Burdine* framework to establish their *prima facie* case and raise a presumption of discrimination. *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179-80 (5th Cir. 1999). To state a *prima facie* case for sex discrimination, the plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) that others similarly situated were treated more favorably than him. *Okoye v. University of Texas Houston Health Ctr.*, 245 F.3d 507, 513-14 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

If the plaintiff successfully sets forth the *prima facie* case of discrimination, then the defendant must articulate some legitimate, non-discriminatory explanation for their actions. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). If the defendant can produce this non-discriminatory reason, the presumption disappears. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

The plaintiff "bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." *Wallace v. Methodist Hosp. System,* 271 F.3d 212, 219 (5th Cir. 2001). The plaintiff at this point "must be afforded the 'opportunity to prove by a preponderance of the

---

[4]The analysis is the same under both §1981 and Title VII. *See Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

6

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The plaintiff may "attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (citing *Burdine*, 450 U.S. at 256). The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace,* 271 F.3d at 219. Atterberry has failed to present a *prima facie* case. The City does not dispute that Atterberry, a black male, is a member of a protected class based on race and that he was subject to an adverse employment action, a lay-off. However, Atterberry has failed to show that he was qualified for the position of safety coordinator or any other available position with the city, or that others similarly situated were treated more favorably.

### A. Qualifications

Atterberry was not qualified for the safety coordinator job that was ultimately awarded to Adams. Atterberry did not have a passing grade on the civil service exam, which was a prerequisite for this position. Further, Atterberry was offered the traffic maintenance position, which, while lower paying, was the only job with the city at the time he was notified of his impending layoff for which he was qualified. Atterberry turned down this job. Although the city made an exception to the civil service exam when they hired Atterberry for his job as field inspector, the city was not obligated to ignore this requirement for all subsequent positions. Even if the city would consider again waiving the passing exam grade as a prerequisite for the safety coordinator job, the city did not have that opportunity because Atterberry, despite the fact

7

that he had heard of the new position, did not submit an application for the position.

From the record, it appears that Atterberry was not qualified for the public records position either. Clark testified that Atterberry was not qualified for any jobs that became available after Atterberry was laid off and this public records position became available on the same date as the safety coordinator position, after Atterberry was laid off. In addition, the public records job was a lower paying job than the traffic maintenance technician position which Atterberry turned down.

### B. Similarly Situated

Although Atterberry was treated less favorably than Adams because he was placed on administrative leave and ultimately laid off, Atterberry and Adams were not similarly situated. "The Fifth Circuit has held that the 'nearly identical' standard applies [] to the fourth prong of the *prima facie* case." *Coleman v. Exxon Chem. Corp.*, 162 F. Supp.2d 593, 608 (S.D.Tex. 2001) (citing *Williams v. Trader Publishing Co.*, 218 F.3d 481, 484 (5th Cir.2000); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1062 (5th Cir.1998); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995)). "Employees with different responsibilities, different supervisors, *different capabilities*, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'" *Id.* (citing *Okoye*, 245 F.3d at 514-15) (emphasis added). Adams and Atterberry were not "nearly identical" regardless of whether the less favorable treatment complained of is that Atterberry was not given the safety coordinator job, that he was placed on paid administrative leave, or that he was not offered the public records position. Atterberry was not qualified for any other job with the city because he had not passed the civil service exam, while Adams had a passing score. Additionally, Adams applied for the job of

8

safety coordinator while Atterberry did not. Finally, Adams, as noted above, had more seniority. Given these distinctions the two employees, although they both worked as field inspectors for the city and were both subject to be laid off, are not "nearly identical" and therefore cannot be considered as similarly situated. Because Atterberry has failed to establish that he and Adams were similarly situated and that he was qualified for the safety coordinator position, he has failed to show a *prima facie* case of disparate treatment because of race.

### IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [Doc. #24] filed on behalf of the City of Laurel is hereby **granted** and the plaintiff's complaint is **dismissed with prejudice**. Any other pending motion is denied as moot. A separate judgment shall be entered herein in accordance with FED. R. CIV. P 58.

SO ORDERED AND ADJUDGED this the 18th day of June, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE